**David William MARR, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–675.**

Court of Criminal Appeals of Oklahoma.

Jan. 4, 1977.

Stephen D. Colbert, Ardmore, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Douglas L. Combs, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

David William Marr, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Jefferson County, Case No. CRF–75–50, for the offense of Burglary in the Second Degree, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1435. His punishment was fixed at twelve (12) years' imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Claude Gerald Shannon testified that on August 7, 1975, he was employed as a police officer for the City of Waurika, Oklahoma; that at approximately 3:00 a. m., while on routine patrol, he heard unusual noises coming from Brown's Drug Store. He radioed the dispatcher and asked her to notify Mr. Brown. He proceeded to check the building for forced entry. Mr. Brown arrived and they decided to enter the store. Prior to opening the door, they observed an individual behind the pharmacy counter. Officer Shannon ran to the back of the building to apprehend the individual if he left through the back door. Other officers arrived at the scene and they entered the drug store. The store was empty and money and drugs were scattered on the floor. A subsequent investigation revealed that two holes had been chopped in the roof of the building. He testified that the lighting inside the store was excellent, but that he had only seen the back quadrant of the individual's head.

George Brown testified that he owned and operated a drug store at 102 North Main Street in Waurika; that on August 7, 1975, at approximately 2:30 a. m., he received a call from the police dispatcher. He proceeded to the store and had a conversation with the night policeman. They checked the doors and found that they were all locked. He observed a door open and close inside the store. He informed the police officer of his observations and was directed to watch the front of the store while the officer radioed for assistance. He observed two persons come from the rear of the store and advance about fifteen to twenty feet into the store proper. He testified that the store was very well lighted. He described the two persons as approximately 5'10", weighing approximately 170 pounds, with Afro hairdos. He called to the police officer and the subjects dropped down out of sight. The police entered the store when the backup unit arrived and found money and drugs scattered on the floor. He identified the defendant as one of the individuals he observed inside his store.

For the defense, Donna Marr, defendant's sister, testified that defendant came home from work on August 6th at approximately 6:30 p. m.; they ate dinner, watched T.V. and went to bed at 10:30 p. m. The defendant left for work at 7:00 a. m. the following morning.

Addie Marr, defendant's mother, testified that he was living with her on August 6, 1975. They watched television and defendant went to bed at approximately 10:30 p. m. She observed defendant the next morning at approximately 6:30 a. m.

Susan Marr, defendant's wife, testified that they watched television until approximately 10:30 p. m. on August 6th, and went to bed. She awoke several times during the night and observed the defendant in bed.

Defendant asserts, in the first assignment of error, that the trial court erred in refusing to grant his motion for change of venue. Defendant argues that the prosecuting witness, George Brown, was so well known by name and reputation to all the jurors that he was denied a fair and impartial trial. We need only observe that the record does not support defendant's contention. The trial court, in overruling defendant's oral Motion to Quash the Jury Panel, stated:

". . . [A]s the Court recalls, most of them did not know Mr. Brown, several of them did not know Mr. Brown, and those that did was a casual acquaintanceship

and the State and the defendant had the opportunity to qualify each individual juror thereafter and the Court also inquired of each juror of their acquaintanceship with Mr. Brown and each juror emphatically stated that their acquaintanceship with him would not interfere with them being able to give both sides a fair and impartial trial, and each juror stated that they could base their decision solely upon the evidence submitted during the course of the trial without any reference to, or any consideration of any acquaintanceship they may have had with any of the parties to the lawsuit. And the Court is satisfied that the jury so empanelled is a fair and impartial jury, and that none of the jurors presently empanelled on this jury could be excused for cause by virtue of any acquaintanceship with Mr. Brown. . . ." [Tr. 17]

Under such circumstances we cannot conclude that the trial court abused its discretion in denying defendant's Motion for a Change of Venue. See *Sam v. State,* Okl. Cr., 510 P.2d 978 (1973).

■ Defendant contends, in the second assignment of error, that the trial court improperly allowed the identification of the defendant. Defendant argues that the in-court identification was tainted by a show-up and an improper photographic identification. The record reflects that the trial court conducted an in camera hearing as to the identification. The witness Brown was thoroughly examined by the defendant, the State and the court. Brown testified that he observed the defendant in the well-lighted store for approximately thirty to forty-five seconds, from a distance of approximately fifty feet; that several days after the burglary he was shown seven or eight pictures by a police officer; that the pictures were "all generally the same build of individuals." He identified defendant from the pictures. Some time later he was again shown a group of pictures. He again identified defendant from the pictures. Someone called him from the court clerk's office and told him they were having a bond hearing on the man "that was supposed to be in the drug store." He came to the court-house and observed the defendant in the courtroom. He informed the District Attorney that he was "positive" as to the identity of the defendant. He testified in response to questions by the court as follows:

"BY THE COURT: What is your identification of the defendant today based upon?

"A. The way that I saw him in my drug store that night. Now, that's—

"BY THE COURT: And your identification is based on the fact that you picked him, or a picture of him out [of] the group of pictures that were shown to you?

"A. Not based on the pictures, because I remembered how he looked. It is just the way I remembered him looking that night in the drug store." [Tr. 42]

It is thus readily apparent that the identification was based upon his observations at the scene rather than his viewing of the photographs or defendant at the court-house. Based upon the witness' unequivocal identification of the defendant on each occasion, we are of the opinion that the photographic identification procedure and the showup were not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. See *Gonzales v. State,* Okl.Cr., 480 P.2d 930 (1972). We, therefore, find this assignment of error to be without merit.

■ Defendant contends, in the final assignment of error, that the trial court erred in not granting him his sixth amendment right to counsel at the showup. Inasmuch as we have previously found that the in-court identification was not tainted by the showup, it necessarily follows that the final assignment of error is without merit.

In conclusion, we observe that the record is free of any error which would cause reversal or justify modification, and accordingly, the judgment and sentence is *AFFIRMED.*

BRETT, P. J., and BLISS, J., concur.